# Thompson *versus* Fisher.

A., the plaintiff, was a merchant in Philadelphia, and B. his factor in Canton. Defendant went out to Canton in 1824, in the employ of B., at a fixed remuneration. B. left Canton, having appointed defendant his attorney. A.'s ships arrived out, consigned to B. Sales were made, and the proceeds invested by defendant, who rendered accounts of sales and accounts current, dated one year after the arrival out of all the ships, resulting in a balance. The account current of the transactions relating to the cargo of one of the ships, was not in evidence; but it was in evidence that these had been signed by him, as attorney of B., and sent to the plaintiff; and it was shown that defendant's papers and books had been burned by a mob. In the accounts of sales he had charged plaintiff with commissions. The accounts were received by the plaintiff's general assignee, in 1827, and the balance accounted for. Held that the accounts had become an account stated, and hence were not within the exception "of merchants, their factors and servants," in the statute of limitation, in an action to recover the amount retained for commissions.

The assignee for creditors had the power to assent to the accounts rendered.

A letter accompanying the accounts, and requesting an opinion to be taken as to the responsibility of defendant, did not affect the case, it not having been shown that the account was in any manner kept open on that account, nothing having been done pursuant to the request.

[Thompson *v.* Fisher.]

CERTIFICATE from the Nisi Prius, *Philadelphia*.

Jannuary 29, 30th.—The only question argued in this case was whether the statute of limitations had barred the action. It was brought to recover the amount charged by the defendant for commissions as factor in his accounts current. The material pleadings were—a declaration containing the money counts—plea, the statute of limitation, replication that the defendant was the factor and servant of the plaintiff; rejoinder, that in 1825 the plaintiff made a general assignment to Renshaw and Mackey, to whom defendant rendered an account in 1826 and in 1827, paid Mackey the balance thereby admitted to be due.

On the trial before ROGERS, J., it appeared that in 1824, the plaintiff, Thompson, was engaged in business at Philadelphia, and his sons John R. and R. R. Thompson, residing at Canton, were his factors. In that year the defendant, Fisher, went out to Canton under an agreement with the Messrs. Thompson, of Canton, at a salary of $1000 per annum, his board and the privilege of two tons. In the year 1825 the plaintiff fitted out three ships for Canton. Before their arrival there the Messrs. Thompson had left Canton. John R. Thompson, who remained after his brothers departure, on leaving Canton, gave the defendant a power of attorney to act for him. When the plaintiff's ships consigned to his sons arrived in Canton, the defendant acted as the consignee—made sales and investments of the proceeds and rendered his accounts, which were stated between plaintiff and defendant.

In 1826, the plaintiff made a general assigment for the benefit of his creditors, to Renshaw and Mackey. In 1826 the account sales of two of the ships were made out by the defendant for account of the plaintiff and forwarded, and also accounts current of the transactions relating to their cargoes. In all the accounts of sales there was a charge of three per cent. for commissions.

The third ship arrived out and her cargo was received and disposed of by the defendant whose accounts of sales were signed by him as attorney for John R. Thompson, in March, 1826. It was stated by John R. Thompson, who was examined by the plaintiff, that the accounts of this cargo had been sent to the plaintiff by the defendant. The account current was not in evidence.

But it was proved that in 1842, the defendant's factory in Canton had been burned by a mob, and his books and papers generally lost. It further appeared that the last account current was dated in December, 1826, and resulted in a balance of $1157 34.

Accompanying the last account current was a letter from defendant to Mackey, one of the plaintiff's assignees, explanatory of his conduct, stating his reasons for charging the commissions, and enclosing a copy of the power of attorney under which he acted, and referring to other papers, and requesting him to obtain the opinion of counsel as to his responsibility.

The accounts sent to the assignees were received by them.  In 1827, the defendant returned to Philadelphia, where he stated another and final account, including the balance of his last account current, and which resulted in a balance due to himself.  This account was given in evidence by the plaintiff.  He continued to reside in Philadelphia until 1840, when he again went to Canton and remained five years.  This action was brought in 1845.

His Honor directed a verdict for the plaintiff, which he afterwards set aside and entered judgment for the defendant.

*F. E. Brewster* and *T. Sergeant,* for the plaintiff in error, contended that the defendant was not the factor, but the servant of the plaintiff, and hence not within the rule as to stated accounts —because all the accounts were those of his employer: 1 *Bouv. Law Dic.* 396, 2 *Id.* 391 ; 12 *Petersd. Ab.* 592 ; *Chitty on Contr.* 377.  That the rule as to implied assent to accounts did not extend to persons resident in the same place.  That his letter to Mackey, asking for an opinion to be taken precluded him from setting up the delay as an acquiescence.  That the assignees did not assent, nor had they power so to do.  Nor was the account conclusive, because no lawful demand existed: *Chit. on Contr.* 648, and it might be opened for the mistakes shown, *Id.* 645.  That the accounts were not shown to the plaintiff, nor were they final, but merely partial, which never conclude: 2 *Mol.* 1; 11 *Wheat.* 237; 1 *Johns. Ch.* 550.

*Perkins* and *Mallery,* contra.—The statute is a flat bar.  The accounts showing the charges were received in 1827 by the party having then the legal title.  The final account current exhibited, has been acquiesced in for nineteen years, during which period the defendant was within the jurisdiction: Bevan *vs.* Cullen, 7 *Barr* 281, is the very case; 13 *Pet.* 401, is conclusive that the assignee was the proper person to receive the account.  If the party is dissatisfied with the mode of settling the balance, his remedy is against the assignee.

The opinion of the court was delivered by

ROGERS, J.—On trial had at Nisi Prius, there being no disputed facts, the jury was instructed to find a verdict for the plaintiff; and on a motion for a new trial, it was decided that on the pleadings and evidence, the verdict should be set aside, and judgment entered for defendant.  To this judgment a writ of error is taken, and, as the case now stands, the only question is, whether the plaintiff is barred by the act of limitations.  The action is assumpsit; pleas, non assumpsit, and the act of limitations; replication, mutual accounts; rejoinder, an account stated; sur-rejoinder, no account stated, and issue taken.

[Thompson *v.* Fisher.]

The prominent facts are these : In the spring of 1826, the defendant, Rodney Fisher, at that time in Canton, as factor or servant, received and disposed of a consignment of various articles of merchandize, for the ships Rush and Scattergood, belonging at the time of the shipment to Edward Thompson.   After the shipment, Edward Thompson having failed in business, assigned all his estate for the benefit of his creditors, to Richard Renshaw and Peter Mackey.   The account of sales, and invoices of the homeward cargoes, containing the charges for the commissions, now the subject in controversy, were forwarded April 1826, and duly received the 12th and 14th September, 1826, as appears by the indorsement of Peter Mackey, his confidential clerk, and at that time the acting assignee.   The 20th December, 1826, the defendant writes to Peter Mackey, enclosing his account current with E. Thompson.   In that letter he calls the assignee's particular attention to the charges of commissions, stating the reasons he considers himself entitled to charge them.   This letter, with the enclosed account, received the 13th April, 1827, exhibits a balance of eleven hundred and fifty dollars and thirty four cents.   In the summer of 1827, the defendant returned to Philadelphia, and in November of the same year, settles the balance due with the assignee.   From the time of his return he continued to reside in the city of Philadelphia, with an intermission from 1840 to 1845, when he was in Canton, until the present time.   In 1840, the defendant's factory with all his books and papers was burnt.   The evidence fully shews that, though fully aware of the defendant's claim for commission, plaintiff and his assignees slept on their rights, without opposition or complaint, for more than nineteen years from the time the account was rendered.

In the aspect the case is now presented in, it is not of the slightest consequence what may be the merits of the original claim ; for, however that may be, if the account rendered the 20th December, 1826, be an account stated, it is a flat bar to the plaintiff's action.   On the act of limitations the case is free from difficulty.—An account, when stated, as is ruled in Bevan *vs.* Cullen, 7 *Barr* 285, ceases to be mutual accounts within the exception of the statute.   When an account of sales is rendered, and the consignor makes no objection to the items of the account, he thereby assents to it, and makes it an account stated.   These principles, which are well settled in reason and authority, are conclusive of this case on the conceded facts ; but it is said the rule does not apply to the relation of master and servant, but only to the relation of merchant and merchant, and their factors.   The servant, as is contended, has no accounts to settle ; they are his master's accounts, *qui facit per alium facit per se.*   The statute of limitations expressly excepts servants.   This distinction is too nice for my comprehension.   What class of persons comes within the ex-

[Thompson *v.* Fisher.]

ception of servants, it is not my business, at this time, to define. It is enough to remark that if the defendant is not a servant within the purview of the statute, the plaintiff is clearly barred. It would then present the ordinary case of an action to recover money received for the use of another, which is clearly barred, unless suit is brought within six years. But if it be the case of a factor or servant, within the meaning of the exception, which the plaintiff has himself averred, no satisfactory reason has or can be given, why the servant as well as the factor—supposing them to mean a different class of persons—is not entitled to claim the benefit of the principle already adverted to, that an account stated ceases to be a case of mutual accounts. Both come within the same category. It is idle to say that the representative of a merchant, residing on the other side of the globe, either as factor, agent, attorney, or *clerk*, has no accounts to settle. It is impossible for a servant—or call him what you will—to arrange the business without the settlement of an account. It would be most unjust that he, although a clerk, should be liable to his principal, at any instance of time, after his vouchers may have been mislaid or *destroyed*. He surely has a right to the benefit of the reasonable presumption of their correctness deduced from the silence, and consequent acquiescence of the principal. Nor is there more solidity in the objection that the rule does not hold when the parties live in the same place. Indeed, the presumption derived from acquiescence would seem to apply with more force, in such case, than where they live in another country and another State. It is difficult to account for silence, when they live in the neighborhood of each other, except on the supposition that the account was examined and found correct. In order to render an account current an account stated, it must, I grant, be assented to by the party to whom it is rendered, but the law does not require an express consent. Rendering an account of itself, does not make it an account stated, but it becomes so by the consent of the consignors to whom it is sent. Their assent is inferred from a silence unnecessarily long. It is a presumption *juris de jure*, for an account current must be objected to without unnecessary delay ; or it is considered, on well settled principles, an account stated, and as such obligatory on the adverse party. The law wisely requires notice of objections if any exist. The rule is absolutely essential to the safety of a mercantile community. That the account rendered by the defendant has, by the lapse of time, become an account stated, is too plain to admit of argument. It is headed "*Edward Thompson in account current with Rodney Fisher.*"— It results in a balance of $1157 34, which in 1827, was settled by the parties. The account is signed *R. Fisher.* It comes directly within the principle asserted in Bevan *vs.* Cullen, that an account rendered, with a balance struck, and that assented to by the party

[Thompson *v.* Fisher.]

to whom it is rendered, is an account stated.   The account current is rendered by a consignee to a consignor, resulting in a balance struck, shewing with precision what the consignee claimed, calling the attention of his principal particularly to the only items about which there could be any dispute; the principal keeping the account without objection for more than nineteen years.   If this on principles well settled, is not an account stated, it is difficult to imagine what constitutes such an account.   That the defendant asked the opinion of others in whom he had confidence before he made the charge, that he solicited the friendly offices of Mackey, requesting him to lay the documents and a statement of the case before counsel, cannot alter the character of the account after acquiescence for so great a lapse of time.   So long a period being suffered to elapse, arising from what cause it may, surely the defendant had a right to act on the reasonable presumption that it met the approbation of his principal.   And whether submitted to counsel or not, is immaterial.   It is not the fault of the defendant that the assignee may have omitted, (if such be the fact—of which we have no evidence,) to avail himself of professional advice.

But the account was sent to Mackey, the assignee, and not the plaintiff, the assignor.   The account of sales, as is said in Bevan *vs.* Cullen, is forwarded according to mercantile usage, to the legal owner of the goods ; the consignee is not bound to notice the equitable or contingent owner.   There, the principle, which is a general one, was correctly applied.   Bevan and Humphreys, to whom the account was sent, were the legal proprietors of the consignment, and so far as concerned the interest of Curcier, to whom the plaintiff in error alleged the account should have been sent, were his authorized agents.   Curcier had but a contingent interest in the shipment.   The account was, therefore, properly sent to the former, whose duty it was to advise the latter of the state and condition of the assignment.   But that is not this case.   What would have been the effect if the account had been sent to Edward Thompson, the legal owner, it is unnecessary to determine.   It is, however, very certain that, had this course been pursued, a more plausible case would have existed for the plaintiffs, than when it is sent, as here, to the only party having a right to demand it, the only person having the authority to settle the account and receive the balance, if any due.   It was properly rendered to the assignee, who alone had a legal authority to reject or confirm it.   The account, it is true, must be stated between the parties, but I know of no rule which forbids an account, as is contended, to be stated except between the original parties.   Such a rule would be inconvenient, and in many cases might lead to mischief.

We perceive nothing in the allegation that the plaintiff is not bound by the account current of December, 1826, because, as is contended, they were assignees or trustees to realize the property

[Thompson *v.* Fisher.]

by the collection of all outstanding debts, and had no authority to abandon a claim. The settlement in question comes expressly within the scope of their authority. If unwisely made, it is nothing to the defendant. If the assignee assented to the balance struck, as was the case, the creditors are bound, unless there was fraud, of which I see no evidence. It is only another form of ascertaining the amount due, the claim for commissions constituting a part of the account. It is not the abandonment, but the acknowledgment of the validity, a claim plainly and distinctly made, and the ascertainment of the amount of the account, which, if done without fraud, binds all the parties. If the creditors, or Edward Thompson, have any redress, their remedy is against the assignees.

Judgment affirmed.